3090689, Frank Christian, and believed by Thomas Watson v. Lincoln Automotive Company and Pentair, Inc. Announced by C. Raymond Bell. Thank you, Mr. Bell. Thank you, Your Honor. May it please the Court and the Counsel. Good morning, Your Honors. Good morning. My name is Ray Bell, and I represent the defendants, Lincoln Automotive Company and Pentair, Inc., in this lawsuit. I would like to thank you for accepting this matter for review pursuant to Supreme Court Rule 308. We are asking this Court to review a question of law that was certified by or identified by the trial court pursuant to Supreme Court Rule 308. We believe that the standard of review with respect to a question of law identified by the trial court is de novo, although the issue as to whether or not an abuse of discretion exists with respect to a trial court's ruling under Supreme Court Rule 103B is, or it is, an abuse of discretion. I'd like to point out, in this particular case, there is no live testimony or other live evidence that, which the trial court was presented with to evaluate the credibility. So all the documents are present in the supporting record that were relied upon by the trial court. The question of law that we have asked for review is whether the public policy favoring adjudication of controversies on the merits is appropriate for consideration in objectively determining whether a plaintiff exercised reasonable diligence in effecting the service of the process pursuant to Supreme Court Rule 103B. And then there's a second portion to it as well, and if so, whether the trial court in this particular case abused its discretion in denying the defendant's motion to dismiss under Supreme Court Rule 103B. I'd like to first address the public policy issue that we raised and was addressed in the trial court's order identifying the issue of law. We, as the defendants, in filing our motion to dismiss pursuant to Supreme Court Rule 103B, established a prima facie case of delay in that the cause of action out of which the cause of action arose accrued on February 7, 2006. The complaint was filed on the last day when the statute of limitations would have ran, would have run February 7, 2008, and service was not affected until March 2, 2009, almost 13 months after the lawsuit was filed and over three years after the cause of action accrued. Just by way of background, the cause of action pertains to a product liability suit against our clients for an alleged defective jack stand where one of the legs broke and claims sustained a knee injury as a result thereof. In our argument, after presenting this evidence, the only evidence presented by the plaintiff before the trial court was evidence of the service 13 months after, obviously, the pleadings themselves, and then also one attempted service in July 9, 2008, in Minnesota, Hennepin County, Minnesota, was actually, as it turns out, the attempted service was at Pentair's place of business, but the only defendant that was attempted to be served was Lincoln Automotive Company. The Hennepin County Sheriff returned it was not served, stating that the defendant, Lincoln Automotive, had moved and offered some information to try and locate that defendant. We do not have any evidence of anything that was presented in the time between filing the suit and the attempted service in July of 2008, and nothing that occurred between that point in time and February 2009, when the current plaintiff's counsel took over the case and promptly obtained service thereafter. When presented with this information, the trial court judge, we do not have a transcript, unfortunately, but the trial court denied our motion, essentially stating that, while he acknowledged and recognized the statutory law and the case law of the Supreme Court rule, he expressed preference that controversies be ruled under merits rather than on procedural issues, and essentially on that basis, stating public policy for adjudication of controversies on the merit and denied the motion. We thereafter filed a motion to reconsider or alternatively to obtain this Supreme Court Rule 308 finding, which the trial court agreed to and agreed to this particular proposition of law. As we've indicated in our brief, there is no, the standard is that once the delay has been shown, it is the plaintiff's burden, and we did show the delay of almost 13 months, it is the plaintiff's burden to show reasonable diligence by competent evidentiary materials that the delay was justified and a reasonable explanation. In this case, if it's an objective standard, we have to look at what the plaintiff did. None of the factors that have been identified by the Supreme Court or any of the appellate courts state that public policy pertaining to resolution of controversies on the merits is one of those seven factors enumerated. Now, I understand and the court's aware that those seven factors are not exhaustive or exclusive, but those are the primary factors which are considered by courts in determining whether or not there has been an unjustified or unreasonable delay in effective service of process. The plaintiff, in their appellate brief, in contesting the issue about whether or not public policy factors should be considered in objectively determining whether service was obtained, there are cases which address it somewhat in the context of the Supreme Court Rule 103B ruling, but in the opposite way. In other words, a trial court cannot use Supreme Court Rule 103B to dismiss a case where reasonable diligence has been shown because of the public policy favoring adjudication of trial on the merits. So none of the cases that have been cited by the plaintiff support the proposition that public policy should be considered or relied on as it was by the trial court in determining whether the plaintiff in this case exercised reasonable diligence in serving our clients, or the defendants in this case. I mean, what about if he had just said, I just didn't do it, I just forgot about it. I mean, doesn't Brzezinski say that even just mere inadvertence isn't enough to dismiss it? That's a good point, Your Honor, and that is why everything is evaluated on a case-by-case basis. The plaintiff, it is up to the plaintiff to provide some explanation, and a lot of different factors go into that. Inadvertence can be an explanation, depending on other facts, such as the time period involved. In Brzezinski, I believe, the time period involved was that might have been four or five months, if I'm not 19 weeks, something like that, if I'm not mistaken. But there are many other factors which are taken into account as well. And, in fact, there are a couple cases, which included Parker v. Pisker, a third district case, which said that inadvertence or oversight is insufficient. And Schusterman also held the same, that inadvertence is not sufficient. But it is determined on a case-by-case basis. Here, we don't even have that, though. We don't have a plaintiff's attorney saying, look, I put this in the wrong file jacket, or I had an attorney, an associate that was handling this that was dismissed, and it wasn't properly redesigned. We don't have any explanation whatsoever. And because it's a plaintiff's burden to show some type of explanation, even inadvertence for some period of time may be acceptable. But in this situation, we don't even have that. We don't have an explanation whatsoever, other than one attempted service. And that first attempted service wasn't made until four and a half months after the complaint was filed in the first place. And then when, and that was only on one of the defendants. The second defendant, there was never even a summons issued until slightly over a year or right about a year after the complaint was filed. Pantera's first summons was February 2009. Lincoln Automotive's first summons was June 25, 2008. I mean, you said it's the plaintiff's burden to show that they showed reasonable diligence. But initially, the burden is on the defendant. And I'm saying under some of our cases and under this public policy, it's not clear to me that you've shown that 19 weeks is too long. Well, no, what I've shown, and you're right, it is. We carry the initial burden to show delay, unreasonable delay. And what we've shown, between filing suit and service of process, and we have shown a delay of 13 months, which we believe does prima facie show an unreasonable delay. Now, it then shifts to them, to the plaintiff, to show that there is some explanation for it. Whether it's, you know, perhaps part of it could be some type of inadvertent argument. Well, I mean, they got their first summons after 19 weeks. And a service is attempted, and it appears to me that it was wrongfully not served. And then it came back, because then when they do serve Lincoln, they serve him at the address that originally comes back and says it's no good. I don't know how that is the fault of the plaintiff or something that they need to, I mean, once they say, yeah, we tried to serve them, I don't know how that doesn't meet their burden, I guess is what I'm saying to you. And if we look at the cases, and like you said, it's case by case, but once this trial judge said, yeah, that's okay. I don't know what that leaves for us to do, because I think they've given some explanation. Maybe not a lot, and obviously, as an American, you're not going to know. And I do understand your question. And here is part of the problem that we have with the evidence that has been relied upon by the plaintiff, is that it's incorrect, and this wasn't the material that was presented, the argument wasn't presented to the trial court, and it's inaccurate, because it was never raised in the trial court. We did come back with some affidavit to that saying that, yes, Lincoln Automotive is located here. The true facts are that Lincoln Automotive was sold by Pentair before 2001. They were not located at that address. The first summons was only brought against Lincoln Automotive and not Pentair, but attempted to be served at Pentair. Lincoln Automotive wasn't. It was owned by another company at that time, and in fact, I mean, this isn't in the record, but it was sold a couple of times to a couple of different companies. Now, reasons for this are the jack stand was alleged in the complaint to have been sold, and I believe late 06, early 07, or maybe it was late 05, early 06, when Pentair did not own Lincoln Automotive and could not have been in any way responsible for this. Then, at some point later, when the service was actually made on Pentair for the first time, when it was attempted, it was also served on Lincoln Automotive at Pentair's residence the first time, but it was determined that this particular jack stand was made before 2001, so it would be potentially a liability of Pentair as it owned Lincoln Automotive at that time when the jack stand was made. But from a review of the complaint, it did not appear to be the case, and because Pentair was never attempted to be served in June or July of 2008, that issue never came up. So the accuracy, what was stated by the sheriff's deputy in Lincoln County was true. The Lincoln Automotive was not there any longer. Yes, Pentair accepted it when it was served on Pentair, but that was later, and we have absolutely nothing to indicate, well, what did the plaintiff's attorney do with it at that time in July of 2008? Did he attempt to follow up? These aren't hard companies to find. I mean, they're companies that have registered agents and offices, and there was absolutely nothing to indicate by way of Plaintiff's affidavit or documentary evidence or deposition testimony to indicate that anything else was done between late June or early July of 2008 and February 2009 when Mr. Watson, the current plaintiff's attorney, took the file. I was going to say what they did was got another attorney. Yes, they ended up getting another attorney. That's exactly right. And according to Mr. Watson's brief, that was in February of 2009, so we just don't know what happened. We don't know if it was inadvertence. Was there some ulterior motive to delay things to make the evidence less clear? We have no idea what the reasons or rationales were. It could have been inadvertence. Absolutely. Thank you. But the situation that we're put in is that we've proffered our burden and that the plaintiff's attorney has not shown a reasonable explanation for the delay other than, as you've indicated, Your Honor, that supposition and speculation about why the service was returned in July of 2008 or 2009. Let me just ask you one thing. Just to be clear, the first attempt to serve Pentair was 13 months after the statute. Correct. That's exactly right. And without any explanation, even though Pentair was located at the place they attempted to serve in July 2008, although they did issue a summons for Pentair. There was no summons even issued. No summons even issued until by Mr. Watson on February 20th or 25th of 2009 for Pentair. So, unfortunately, we just don't have any explanation whatsoever for the delay. And, yes, it's a delay between February and June and July, arguably. What's the reason for it? We don't know. I mean, if it was for ulterior motives to lengthen things, let evidence get stale, that's one thing. But we don't have any evidence of that one way or the other. Or inadvertence, we don't have any evidence one way or the other. So the plaintiff simply hasn't met any burden of proof in establishing reasonable diligence in the serving process, given a 13-month, almost 13-month delay. With one attempt, we don't have any evidence of any investigation. An attempt to check with the Secretary of State's office for registered agents, alias process servers, nothing like that that could potentially help to explain, justify the delay. Thank you. Thank you. Thank you, Mr. Bell. And Mr. Watson. Good afternoon, Your Honors. Please support counsel. I'm Tom Watson. I represent the plaintiff, Frank Christian, in this matter. I think to begin with, I think it's important to discuss the purpose of the Rule 103B. The purpose is to protect the defendant from any unnecessary delays in service, to prevent the circumvention of the statute of limitations. And like any statute of limitations, it must be construed in light of that objective, which the basic policy is to afford the defendant a fair opportunity to investigate the circumstances upon the claim. Well, in light of what you just said, in context, in this case, there was no suit filed against the plaintiff, and the plaintiff didn't file a suit against the defendant until the day before the statute ran. That's correct, Your Honor. And then at least with respect to Pinter, never even had the summons issued until over a year after that. That's correct, Your Honor. So how does that stack up? Well, the argument with Pinter, I think that's a different question. I think most of this argument is dealing with Lincoln Automotive, and I believe the trial court focused most of its attention on Lincoln Automotive as well. And if Your Honor, I'll get back to the question here. But I think before that, I think we need to look at what the trial court was doing with the public policy and how it comes into play in ruling on a 103B motion. I think the public policy of adjudicating the cases on their merits comes into play any time a trial court is ruling on a motion to dismiss. I don't think you can disregard it, and especially in this case where you have this seven-factor test in which counsel agrees that it's a non-exhaustive list. The Supreme Court said the court may consider these factors but is not limited to. And I believe Colby Brubaker, which the defense cites in their brief, even explains it's a non-exclusive list. I think the public policy of deciding the case on its merits should also be included in that list, or at the very least, I don't think it's inappropriate for a trial court to consider the public policy. The defense's rationale, the use of the public policy, they say it should only be used after the court has looked at the seven factors. I don't think that's a workable way to use the public policy consideration, meaning no trial court would go through the seven factors, determine that the plaintiff was reasonable at due diligence, and then say, as a public policy matter, we're going to dismiss the case. I don't think that would ever work. It doesn't even make sense. And furthermore, the defense thinks that if you consider the public policy in these type of cases, you're going to eviscerate Rule 103B. I don't think that's the case at all. I think that's an overstatement at the very least, and I think it disregards the harsh reality that if you ignore the public policy, that either the guilty will go free or someone that's been wrongfully injured will go uncompensated. Let me ask you this. Which of those seven factors favor your position? Well, I think four of the factors actually favor our position. One, I think the total length of time, and this is with Lincoln Automotive, it is 13 months, but I believe it would have been much shorter, would have been under the five months, if the original service would have gone as planned, which I think is wrongfully denied. There's no evidence in the record saying that Lincoln Automotive wasn't at that address, and the trial court acknowledged that they were eventually served at the same address. So I think if it would have been a routine service, like it should have been with Lincoln Automotive, it would have been under five months. Well, what evidence is there that they did live there other than, I mean, service for them on the 13 months later, but what evidence is there in the record that they did, that they were there? Well, I think the reasonable inference is when I wish I could know exactly what the prior attorney was thinking, but he obviously located this address, served or attempts to serve them at this address, and then months later, my office attempts to serve them at the same address, and they accept it. I think the reasonable inference is that they were there the entire time, or at the very least, it's not an unreasonable inference, and I think the trial court determined it as such. Further answering your question, I think a second factor, the knowledge of the defendant's location, I think that obviously we've had some issues with that here with Lincoln Automotive. One, apparently it's not in the record, but apparently the company's being sold and bought by multiple companies. We try and serve them at their address, but for some reason, it's returned saying that they've moved. I think the third factor, the special circumstances, I think we've got two in this situation. Once again, the denial of the original service as the defendant had moved. And two, I think the changing of attorneys also is a special circumstance. There's time involved in that, such as evaluating the file and talking to the client and getting the file from the prior attorney. And the fourth factor, the defendant was ultimately served as well. So I think there's at least four factors that lean towards the favor of the plaintiff. And I think, well, if the defendant wasn't ultimately served, there wouldn't even be a 103B motion, right? Yeah, I agree, but that is a factor that courts have put into their opinions, and I don't know. Let me ask you this. Do you know, is there any evidence in the record as to why the plaintiff waited until the night, the day before the statute ran to file the suit? And is that significant? Well, no. Well, there's no evidence in the record why the prior attorney waited to the last day. I wish I knew. I sent letters and calls to find out, and no response. But in some cases, that is, the courts do look at that. That's correct. I think the defense has cited cases like that. But I don't think it's as fatal to the plaintiff's claim being that the statute of limitations is two years. You have a two-year window to file. It's fully appropriate to file the last day. It's not against the rules. I think also in this case, I think the best way to look at it is in two different segments. I think the first segment being the five months or four-and-a-half months that the prior counsel took to serve the defendant or attempt to serve the defendant at the address in Minnesota. As Justice O'Brien was saying in Siegel v. Succo, the Supreme Court said the four-and-a-half-month delay was explained by just mere inadvertence. Here, we don't know for sure what happened, but I don't think it could be anything worse than mere inadvertence. There's no evidence that the prior counsel was waiting to circumvent the statute of limitations or to gain a tactical advantage in the litigation. And in the second segment, there's the six-month period of, I guess it would be, some downtime. Once again, we don't know exactly everything that was happening, but there was the hiring of the new counsel, and we served the defendant at the same address. And I think that case is similar to the Clemens v. Atlas case I cited in the brief, where in that case, the plaintiff filed a suit in October. There were a couple attempts at the defendant's address in November, and then nothing happened until the next May. And at that time, the plaintiff looked at or called the postmaster to find out what the defendant's address was. It turned out it was the same address as he initially tried to serve. The court there said that the initial service should have been a routine service, but for some reason, the defendant wasn't served, and it was no fault of the plaintiff, and the plaintiff shouldn't be held accountable for that fault. The court there, it appears they didn't have any facts. Really, they had more of speculation. They said, well, this routine service, it could have been defeated maybe because the defendant was evading service of process or possibly the plaintiff was just unlucky and the defendant was always away from home at the time. And also in the Clemens case, the court said the five-month period after the initial service, it could have been sooner, but they said it wasn't fatal to the plaintiff's claim, and it wasn't unreasonable for that time frame. I think the same thing can be said here. Although there is a six-month period from the initial service attempt to link an automotive to the final service, I don't think six or seven months is completely unreasonable, especially due to the fact this is a defendant in Hennepin County, Minnesota. We're not trying to serve someone here in Illinois, which would probably be a little easier. And I think this case really, with respect to linking automotive, what it really turns on is that initial attempt at service and the refusal, whether it be a mistake or an inference on the part of the defendant. I'm not sure what it is, but I don't think the plaintiff should be held to a higher standard in that respect. And I think here it's the defendant's argument in light of the 103B, the purpose of the rule being, once again, to make sure that evidence isn't stale or to circumvent the statute of limitations. I think the defendant's argument is hard to coincide with that, being we attempt to serve you at your address. Months later, we come back and serve you at that same address. And now you say, no, it's been too long. You didn't serve us on time. Well, but isn't the defendant's argument that linking automotive at any relevant time was not there, that ultimately Penner decided that we'll accept it for him? Well, possibly that's not in the record. There's no evidence to support that. The only evidence is the first attempt at linking automotive to the address in Hampton and the second attempt at the same address. I think the trial court reasonably inferred that with the evidence in front of it, that this was reasonable. The defense could have filed an affidavit stating, hey, we were moved at this point, therefore it was an unreasonable attempt, but that wasn't done here. And I think also important in deciding this case is this is on an abuse of discretion standard, whether the trial court abused its discretion. And I think the Siegel v. Sacco case, where the Supreme Court actually went as far to say that this five-month gap in service of process, it was actually an abuse of discretion to hold that the plaintiff was not unreasonable. Counsel, you have two minutes. Thank you. Now, here I think this court in McCormick v. Leons, I think you said it perfectly here, with dismissal of an action pursuant to Rule 103B is within the sound discretion of the trial court, should not be disturbed on review absent abuse of discretion. Abuse of discretion will be found only when no reasonable person can take the view of the trial court. The appeal court's job on review is not to re-judge the matter, but to determine whether an abuse of discretion has occurred. I don't, in light of the circumstance of this case, I don't think it can be said that the trial court abused its discretion or that no reasonable judge could have found the way he did, especially with regards to Lincoln Automotive. Would you agree it would be a different matter as to Pintere? I think Pintere, I think it is in a different situation. I think it contrasts nicely with the attempts at Lincoln Automotive. Possibly there may be, I think there's a better case for abuse of discretion with Pintere. But with Lincoln Automotive, I think defendants still have to be held accountable for the mis-service, the initial mis-service of Lincoln Automotive. And I don't necessarily think it's fair that they be able to take advantage of a mistake such as that in light of the public policy of wanting to determine these matters on their merits. I think the situation, I guess the real world analogy I would say, is in a football game where both sides have a penalty. Penalties offset, let the game go on. I think the same thing can be said here. I think both sides, they have their issues on their case. But the public policy, and I believe the trial court probably was thinking the same thing, is we should probably just allow this to go and be decided on its merits. Thank you. Thank you, Mr. Watson. Mr. Bell, any rebuttal? Thank you, Your Honor. Your Honors, the problem with that analogy is that neither of my clients committed a penalty in this case. The only argument that is being raised by the plaintiff's attorney is that my client, Lincoln Automotive, was present in July 2008 when the service was attempted, and that is simply not the case. Let me ask you this. Is that evidence in the record that they're not there? No, it's not. But here's my point. Then how do we reverse? You know, it's your job to make a record. When you came in on your 103B, did you bring in evidence as to where Lincoln Automotive was in July 2008? No, Your Honor. But the problem is that that was not raised by or brought into evidence by the plaintiff's attorney either, and it is his burden of proof. You have more knowledge of that. I think we're asking the same question. You have more knowledge of that than the plaintiff does. Right, but we provided that. That information was provided to the plaintiff by the sheriff when the sheriff said that Lincoln Automotive had moved. Except that the next thing that's in the record, six months later or whatever, is that they're served there. That's correct. I mean, I'm reading the briefs. I'm reading the record. That's all I know. Yes, that is correct. So my assumption is that the sheriff screwed up. That the sheriff all screwed up, yeah. And, Your Honor, yes, that is one interpretation that could be assigned to it, but it is not the only interpretation or necessarily the most reasonable interpretation of what happened. Had the plaintiff taken action then and there to then try and attempt to get an alien summons and reserve the defendant? It may not be here, but I mean, that's why we hear these cases. Because those things that should have happened. Go ahead. I'm sorry. If the issue is, it seems to me, is could any reasonable person draw under the standard of view the conclusion that Judge Vespa drew that, well, maybe they were there the first time and they should have been served. Now, the gap's another thing, but then when they're served there later, it seems to me it was incumbent upon you, if they weren't there and they never resided there, to come into court with your 103B motion to show a judge, and here's the proof, that Lincoln Automotive was never at this address. Absent that kind of motion, it seems to me that Judge Vespa's conclusion was not, at best, reasonable people could disagree with it. And that doesn't fall under the abuse of discretion category. Well, there are three things that I can say in response to that. First is that that argument, that issue, that as a factor was not raised at all in the trial court or relied upon in the trial court. And I understand that, yes, we don't have a transcript for that, but it is also the plaintiff's burden to present the necessary constant evidentiary materials to support his case and his explanation for why there was this delay. So I don't think that the reasonable inference from it, what I have to offer, which is the truth, is also a reasonable inference. So I think where you have different reasonable inferences that can be supplied, it's the plaintiff that is supposed to provide this information and not the defendant. Second, we still are dealing with a delay of four months. Go ahead. I'm sorry. A delay of four and a half months between the filing of the suit and the first attempt, and then a delay of seven months between being advised that Lincoln Automotive had moved and taking no activity whatsoever to provide any support for our explanation as to- I'll take that one. Now had the plaintiff presented to either the trial court or in any of his trial court materials that while we did attempt to assert him that there was some lie on the part of the defendant to say that Lincoln Automotive had moved when it had not moved, yes, that evidence would have been forthcoming, but that argument ignores any evidence in favor of that proposition. The plaintiff is upon review of the three exhibits to his response to our motion to dismiss and the response itself. So I don't believe that that's something that is incumbent upon us. It's incumbent upon the plaintiff to provide the reasonable explanation and competent evidentiary materials and not inferences and speculations that just may or may not be true, and in this case were not true. Your Honors, I had a couple of other points that I wanted to bring up. Thank you. Thank you, Mr. Bell. And thank you both for your argument today. We will take this matter under advisement, get back to you with a written disposition within a short time. And we'll now take a recess.